FILED ✓   LODGED
RECEIVED ___   COPY

SEP 1 5 2011

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

*REDACTED FOR PUBLIC DISCLOSURE*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>    v.<br><br>1. JERRY EDWARD CRAIG SR.<br>   Counts 1-20,<br><br>2. JERRY EDWARD CRAIG JR.<br>   Counts 1-20,<br><br>        Defendants. | **CR 11 18 1 9 PHX ROS ECV**<br><br>**I N D I C T M E N T**<br><br>VIO:  18 U.S.C. § 1349<br>(Conspiracy to Commit<br>Wire Fraud)<br>Count 1<br><br>18 U.S.C. § 1343<br>(Wire Fraud)<br>Counts 2-17<br><br>18 U.S.C. § 1014<br>(False Statements)<br>Counts 18-20<br><br>18 U.S.C. § 2<br>(Aid and Abet)<br>Counts 1-20<br><br>18 U.S.C. § 982(a)(2)<br>(Forfeiture Allegations) |

THE GRAND JURY CHARGES:

At all times material to this Indictment:

## **DEFENDANTS**

1.    JERRY EDWARD CRAIG SR. ("CRAIG SR."), is a resident of Phoenix, Arizona.

CRAIG SR. owned and operated Spectrum Financial Group ("SFG") and served as SFG's Chief

Executive Officer.   CRAIG SR. also served as the President of the Arizona Mortgage Broker's

Association.

2.      JERRY EDWARD CRAIG JR. ("CRAIG JR.") is a resident of Scottsdale, Arizona. CRAIG JR. served as SFG's President.

**RELEVANT ENTITIES**

3.      SFG was an Arizona corporation that was formed in August 2003. SFG was in the business of brokering residential mortgage loans and was not a lending institution. SFG sometimes served as a short-term lender by providing mortgage financing through warehouse credit lines. The credit lines were made available to SFG from the Wintergroup, First Collateral, and Regions Bank ("credit line providers"). The credit line providers provided SFG with access to millions of dollars of credit. SFG would access the credit to provide short term mortgage loans for certain borrowers. It was understood that SFG would sell and/or divest itself of the mortgage loan to an investor within a short time period. If SFG held a mortgage loan on a credit line for more than 90 days, it was required to pay at least a 10% curtailment penalty to the credit line provider. SFG also contracted with First Fidelity Bank for an emergency short term credit line that was used to pay off a loan on one of the other credit lines.

4.      First Fidelity Bank is a federally insured lending institution that is based out of Oklahoma City, Oklahoma. First Fidelity Bank provided a 2.5 million dollar credit line to SFG.

5.      First Collateral Services Inc., was a wholly-owned subsidiary of Citi mortgage, and was based out of Concord California. First Collateral Services provided a credit line to SFG to provide short term mortgage financing.

6.      The Winter Group, d.b.a. Terwin Holdings L.L.C., was based out of New York, New York. The Winter Group provided a credit line to SFG to provide short term mortgage financing.

7.      Regions Bank is an Alabama corporation and a federally insured lending institution. In 2007, Regions Bank provided SFG with a 35 million dollar credit line. Before funds could be issued from the credit line for a home loan, Regions Bank reviewed the loan application and supporting documentation to determine the applicant's ability to repay the loan.

### COUNT ONE
### CONSPIRACY TO COMMIT WIRE FRAUD
### (18 U.S.C. § 1349)

8.      The factual allegations in paragraphs 1 through 7 of this Indictment are incorporated by reference and re-alleged as though fully set forth herein.

9.      Beginning at a time unknown to the Grand Jury, but by at least as early as in or about February, 2005, and continuing to a date unknown to the Grand jury, but through at least in or about August, 2007, in the District of Arizona and elsewhere, defendants CRAIG SR. and CRAIG JR., individually and/or doing business through SFG, along with other individuals and entities known and unknown to the Grand Jury, did knowingly and willfully agree and conspire with each other to commit Wire Fraud offenses against the United States in violation of Title 18, United State Code, Section 1343.

### OBJECTS OF THE CONSPIRACY AND SCHEMES TO DEFRAUD

10.      The objects of the conspiracy and schemes to defraud, as devised and executed by the defendants and others, individually and through the various entities described above, were:

   a.      To make and cause to make, and facilitate to make, false and fraudulent representations and omissions to lending and financial institutions for the purpose of obtaining monetary funds which were used to fund mortgage loans to third-parties, and/or pay off existing mortgage loans held by SFG or some other institution; and

   b.      To enrich themselves with the fees and commissions related to the fraudulent practices they engaged in, or facilitated others to engage in, and by other means, to the detriment of financial and lending institutions.

### THE MANNER AND MEANS OF THE CONSPIRACY

11.      The manner and means used by the defendants, and others, either individually or through SFG, to achieve the objects of the conspiracy and the schemes and artifices to defraud, included the following:

   a.      CRAIG SR. and CRAIG JR. authorized loan applications prepared by SFG

3

1    employee Vincent Vendittelli ("Vendittelli") which contained false and fraudulent

2    information and material omissions about the third-party borrower, and/or failed

3    to meet all of the lending conditions from the lender.

4    b.    CRAIG SR. and CRAIG JR., directed Vendittelli to originate and submit certain

5    loan applications while knowing or foreseeing that the loan applications contained

6    false information.

7    c.    CRAIG SR. and CRAIG JR. directed Vendittelli, and others, to refinance

8    mortgages, in the names of third-party borrowers, so that SFG could avoid paying

9    a financial penalty for maintaining the mortgage loan on its credit line for over 90

10   days.

11   d.    CRAIG SR. and CRAIG JR., made false and fraudulent material representations,

12   and omissions to First Fidelity, an FDIC insured lending institution, for the

13   purpose of influencing First Fidelity's lending decisions and other acts.

14   e.    To increase SFG's fees and commissions, CRAIG SR. and CRAIG JR. permitted

15   Vendittelli to process loans for Henry Oliver Ford, a.k.a Cleothus Jackson

16   ("Ford"), Jason Chrzanowski ("Chrzanowski"), and Shawn Kyle Thomas Brooks

17   ("Brooks"). Ford, Chrzanowski, and Brooks referred "straw" buyers to Vendittelli

18   to obtain mortgage loans which were used to purchase residential homes. In many

19   instances, the "straw" buyers were purchasing a home that was owned by Ford,

20   Chrzanowski, and/or Brooks for an inflated price. In other instances, the "straw"

21   buyer purchased the home from a third-party seller who had agreed to sell the

22   home at an inflated price, and had further agreed to provide the difference between

23   the original listed price and the inflated price to Ford or Chrzanowski.

24   1)    After a "straw" buyer purchased a residential home at the direction of

25   Ford, Chrzanowski, or Brooks, the home would then be re-sold to another

26   "straw" buyer, acting at the direction of Ford, Chrzanowski, or Brooks, for

27   a price that would result in a profit.

28

2)   To entice an individual to act as a "straw" buyer, Ford, Chrzanowski, Brooks and others represented the following:

a) that a "straw" buyer could purchase a residential home(s) with the use of only their credit score and without providing a down payment; b) that Ford, Chrzanowski, Brooks, and others, would pay the mortgage on the property; and c) that the "straw" buyer would be paid a flat fee or a percentage of the sales price after the home was sold.

3)   The "straw" buyers were typically paid between $10,000 to $40,000 after the sale.

4)   In most, if not every case, the "straw" buyers were not financially qualified to obtain the home loans needed to purchase the Ford, Chrzanowski and Brooks' homes and they were referred to SFG to obtain the mortgage.

5)   CRAIG SR. and CRAIG JR., knew or could foresee SFG employee Vendittelli, and others, was originating loans for Ford, Chrzanowski and Brooks' straw borrowers which falsely represented and/or overstated the straw buyer's income, assets, and monthly rent (if applicable), intention to occupy the home as a primary residence, and amount and source of the down payment;

f.   Between February 2005 and August 2007, CRAIG SR. and CRAIG JR. authorized the lending of over 100 mortgage loans originated by Vendittelli, and others, causing lending institutions to provide over $40 million dollars in loans. Some of the residential homes involved in the conspiracy include:

XXX03 North 39th Way, Phoenix, Arizona

XX92 East Hummingbird Lane, Phoenix, Arizona

XX16 East De La Luna Street, Scottsdale, Arizona

XXX56 North 112th Place, Scottsdale, Arizona

XXX16 North Club Pointe Drive, Anthem, Arizona

1    XX22 East June Circle, Mesa, Arizona

2    XX15 North 74th Place, Scottsdale, Arizona

3    XX02 East Lincoln Drive, Paradise Valley, Arizona

4    XXX01 East Happy Valley Road, Scottsdale, Arizona

5    XX33 East Indian Bend Road, Paradise Valley, Arizona

6    XXX93 North 94th Place, Scottsdale, Arizona

7    XXX97 North 104th Street, Scottsdale, Arizona

8    XXX23 North Elena Drive, Fountain Hills, Arizona

9    XXX17 East Turnberry Road, Scottsdale, Arizona

10   XX01 East Mockingbird Lane, Paradise Valley, Arizona

11   XX10 East Mountain Springs Road, Scottsdale, Arizona

12   XX02 North 63rd Place, Paradise Valley, Arizona

13   XX40 East Shea Boulevard, Scottsdale, Arizona

14   XXX60 East Filaree Lane, Scottsdale, Arizona

15   XX62 East Calle Tuberia, Phoenix, Arizona

16   XX70 East Calle Tuberia, Phoenix, Arizona

17                          **OVERT ACTS**

18   12.    In furtherance of the aforesaid conspiracy, and to achieve the objects of the conspiracy,

19   the defendants, and others known and unknown to the grand jury, through SFG, committed or

20   caused to be committed the following overt acts in the District of Arizona and elsewhere:

21        a.    Sometime in 2005, at the SFG's offices in Scottsdale, Arizona, CRAIG SR. and

22              CRAIG JR. instructed others that they should use a company to receive cash back

23              from real estate transactions.  Lending institutions would have concerns if they

24              received HUD-1 settlement statements which show an individual receiving a

25              significant amount of funds at the time of closing.

26        b.    Sometime in mid-2006, EMC mortgage, which was owned by Bear Stearn,

27              informed SFG that it would no longer accept mortgage loans originated by

28                                        6

1    Vendittelli or loans for Chrzanowski because they believed the loans contained
2    fraudulent representations.  CRAIG SR. informed Vendittelli that he should not
3    be concerned by this issue and instructed Vendittelli to have his loans signed by
4    SFG employees Travis Ford or Rhett Doolittle, if he needed to fund a loan through
5    EMC mortgage.

6    c.    On January 23, 2007, a federal agent served a summons on CRAIG SR., for
7          documents related to the mortgages for XX33 E. Indian Bend, XX22 E. June
8          Circle, XXX801 E. Happy Valley Road #34, XX15 N. 74th Place, and XX34 E.
9          Sweetwater.  Four of these loans were handled by Vendittelli and were associated
10         with Ford's "straw" buyers.  Shortly after the service of the subpoena, and at the
11         offices of SFG in Scottsdale, CRAIG SR. informed Vendittelli about the summons
12         from the U.S. Department of Homeland Security and that the government was
13         reviewing some of his files involving Ford's "straw" buyers.  CRAIG SR.
14         instructed Vendittelli to continue working with Ford and submitting his loans for
15         funding.  In addition, CRAIG SR. stated that he was now going to take 20%,
16         instead of 5 to 10%, from Vendittelli's commissions for Ford's loans.

17   d.    Sometime in early 2007, at the SFG's office in Scottsdale, Arizona, CRAIG SR.
18         asked Chrzanowski for $200,000.00 because SFG was experiencing a cash flow
19         problem.  CRAIG SR. informed Chrzanowski that SFG will take care of whatever
20         loans he requests.  CRAIG SR. characterized the money as a "loan".  Chrzanowski
21         believed that he needed to pay CRAIG SR. so that SFG would continue funding
22         the loans to his "straw" buyers.

23   e.    In or about March of 2007, CRAIG SR. contacted Ford and informed him that
24         SFG's credit lines held mortgages that they could not divest and/or sell to
25         investors.  CRAIG SR. requested Ford to find buyers for these properties that
26         were funded by or through SFG.

27   f.    Sometime in early 2007, CRAIG SR requested money from Ford because SFG

28                                           7

could not sell and/or divest certain mortgages on their credit lines.  Ford paid over $150,000 to CRAIG SR., and he believed he needed to pay CRAIG SR. so that SFG would continue approving loans to his "straw" buyers.

### XX62 East Calle Tuberia

g.   On or about August 11, 2006, SFG employee Vendittelli prepared a residential loan application for SFG employee A.Threinen to purchase the home at XX62 East Calle Tuberia, Phoenix, Arizona, for $650,000.00.  The residential loan application

falsely represented A.Thrienen had put $10,000.00 into escrow for the home purchase and that he intended to use the home as a primary residence.

h.   SFG submitted the loan application to Regions Bank to obtain a short term warehouse line of credit to fund the loan.  Regions Bank approved the loan and wired approximately $650,000.00, interstate, to First American Title, Arizona, on August 14, 2006.

i.   In or around October, 2006, SFG employee Vendittelli prepared a residential loan application for C.Nash to purchase the XX62 East Calle Tuberia home for $800,000.00.  C.Nash was recruited by Brooks to purchase the home from SFG employee A.Threinen.

j.   SFG submitted the loan application to Terwin Mortgage to obtain a short term warehouse line of credit to fund the loan.  Terwin Mortgage approved the loan and wired approximately $800,000.00, interstate, to First American Title, Arizona, on October 18, 2006.  First American Title provided $645,071.77 to SFG.

k.   CRAIG JR. and CRAIG SR. did not forward any of the $645,071.77 to pay off the loan from Regions Bank, nor did they inform Regions Bank that the underlying collateral had been sold to a different buyer.

l.   On or about February 15, 2007, CRAIG JR. and/or CRAIG SR. requested a $468,000.00 line of credit from First Fidelity Bank to pay Regions Bank.  CRAIG

JR. and/or CRAIG SR. falsely represented that they were unable to divest and/or sell the $650,000 loan from Regions Bank. They did not inform First Fidelity Bank that the collateral, the home at XX62 East Calle Tuberia, had been sold in October 2006 to C.Nash, and that SFG had been paid $645,071.00 from Terwin Mortgage.

m.     Based on the representations from SFG, First Fidelity Bank approved the request and wired $468,000 to Regions Bank, interstate on February 15, 2007.

### XX40 East Shea Boulevard

n.     In or around June, 2006, Chrzanowski recruited M.Wilson to purchase the home located at XX40 East Shea Boulevard, Scottsdale, Arizona for $980,000.00.

o.     In or about September of 2006, CRAIG SR. and CRAIG JR. directed Vendittelli to apply for a refinance of the M.Wilson mortgage, for the property at XX40 East Shea Boulevard. SFG was about to incur at least a 10% curtailment penalty for failing to divest and/or sell the loan off of SFG's credit line. Vendittelli, or others acting at his direction, prepared and submitted the refinance paperwork in the name of M.Wilson for the purpose refinancing the loan to prevent SFG from incurring a penalty. The refinance paperwork falsely represented that M.Wilson was the person who lived in and owned the property, and that M.Wilson was seeking a refinance of his mortgage.

p.     The refinance for M.Wilson's loan was issued by First Collateral Services who wired approximately $1 million dollars, interstate, to Capital Title Agency, Arizona, on September 15, 2006.

q.     On September 21, 2006, CRAIG JR. sent an email to Samir Kanuga, at First Fidelity, to request a $750,000 line of credit for the M.Wilson Shea mortgage. CRAIG JR. falsely stated that:

"Loan was denied at the investor. Since funding the loan, the borrower had begun a remodel process on the home. Thus, while we have the means to move this to

a new loan, the home is not able to be reappraised at the current time as some of the work being done is in the kitchen.  We expect that once we can get the work completed...the home will actually appraise for quite a bit more and will be refinanced at that time." CRAIG JR. omitted the fact that on September 15, 2006, SFG had refinanced M.Wilson's loan through First Collateral Services.

r.   Based on CRAIG JR.'s false representations, First Fidelity Bank authorized the line of credit and wired $750,000.00, interstate, to SFG's U.S. Bank account on September 22, 2006.  CRAIG SR. and CRAIG JR. did not use any of the $750,000.00 to pay First Collateral who had refinanced the M.Wilson loan on September 15, 2006, and who was first in line to be reimbursed for the loan.

s.   On January 24, 2007, an SFG employee prepared a residential loan application for D.Huth to purchase the home at XX40 East Shea Boulevard for $1.4 million dollars. The residential loan application falsely represented D.Huth's income and assets.

t.   SFG submitted the loan application to Regions Bank to obtain a short term warehouse line of credit to fund the loan.  Regions Bank approved the loan and wired approximately $1.4 million, interstate, to Security Title Agency, Arizona, on January 24, 2007.

u.   CRAIG JR. and CRAIG SR. did not forward any of the $1.4 million dollars to First Fidelity to pay off the $750,000 loaned to SFG on September 22, 2006.

v.   In or about August 2, 2007, CRAIG JR. falsely represented to First Fidelity that 1) A.Threinen still owned the home at XX62 East Calle Tuberia and was making payments; 2) M.Wilson still owned the home at XX40 East Shea Boulevard and was making payments; and 3) that Zydek had refinanced the loan, for the home at XX602 E. Sunburst Drive, from another bank and not SFG.

10

**XXX23 North Elena Drive**

w.  On or about July 21, 2005, SFG employee Vendittelli prepared a residential loan application for M.Tucson to purchase the home at XXX23 North Elena Drive, Fountain Hills, Arizona, for $1,395,000.00.  The residential loan application falsely represented that M.Tucson would provide a $70,000.00 down payment at the time of closing, falsely represented her income, and her monthly rental payments.  M.Tucson was recruited by Chrzanowski to purchase the home.

x.  In July, 2005, an SFG underwriter informed CRAIG JR., that M.Tucson's loan application contained false information.  CRAIG JR. instructed the underwriter to authorize the loan.

y.  On or about September 13, 2006, SFG employee Vendittelli prepared a residential loan application for A.Plummer to purchase XXX23 North Elena Drive for $1,663,976.00.   The residential loan application falsely represented that A.Plummer earned $37,000.00 per month and that A.Plummer would provide a $110,000.00 down payment.  A.Plummer was recruited by Brooks to purchase the home.

z.  SFG submitted the loan application to Regions Bank to obtain a short term warehouse line of credit to fund the loan.  Regions Bank approved the loan and wired approximately $1.6 millions dollars, interstate, to Capital Title Agency, Arizona, on September 13, 2006.

**XX33 East Indian Bend Road**

aa.  On or about July 25, 2005, SFG employee Vendittelli prepared a residential loan application for B.McVey to purchase XX33 East Indian Bend Road, Paradise Valley, Arizona, for $1,350,000.00.  The residential loan application falsely represented that B.McVey was paying $7,200.00 per month in rent.  B.McVey was recruited by Chrzanowski to purchase the home.

bb.  On or about August 18, 2006, SFG employee Vendittelli prepared a residential

11

loan application for D.Whitlock to purchase the home at XX33 East Indian Bend Road for $2,089,830.00. The residential loan application falsely represented that D.Whitlock had $175,000.00 in his bank account and that he intended to use the home as a primary residence. D.Whitlock was recruited by Ford to purchase the home.

cc.   SFG submitted the loan application to Regions Bank to obtain a short term warehouse line of credit to fund the loan. Regions Bank approved the loan and wired approximately $2 million dollars, interstate, to Capital Title Agency, Arizona, on August 25, 2006.

### XXX01 East Happy Valley Road

dd.   On or about August 2, 2005, SFG employee Venditelli prepared a residential loan application for D.Kiniry to purchase the home at XXX01 East Happy Valley Road, Scottsdale, Arizona, for $1,225,681.00. The residential loan application falsely represented that D.Kiniry was paying $5,900.00 per month in rent. D.Kiniry was recruited by Chrzanowski to purchase the home.

ee.   SFG submitted the loan application to JP Morgan Chase Bank to obtain a short term warehouse line of credit to fund the loan. JP Morgan Chase Bank approved the loan and wired approximately $1.2 million dollars to Capital Title Agency, Phoenix, on September 28, 2005.

ff.   On or about July 14, 2006, SFG employee Venditelli prepared a residential loan application for J.Turley to purchase the home at XXX01 East Happy Valley Road for $2,648,000.00. The residential loan application falsely represented that J.Turley would provide a $500,000.00 down payment at the time of closing, and that he intended to use the home as a primary residence. J.Turley was recruited by Ford to purchase the home.

gg.   SFG submitted the loan application to Regions Bank to obtain a short term warehouse line of credit to fund the loan. Regions Bank funded the loan and wired

1   approximately 2 million dollars, interstate, to Capital Title Agency, Phoenix, on

2   August 4, 2006.

### XXX97 North 104th Street

3

hh.   On or about November 2, 2005, SFG employee Vendittelli prepared a residential

4

5   loan application for J.Scott to purchase the home at XXX97 North 104th Street,

6   Scottsdale, Arizona, for $1,329,750.00.  The residential loan application falsely

7   represented that J.Scott paid $5,000.00 per month in rent, and that he would

8   provide a $91,000.00 down payment at the time of closing.  J.Scott was recruited

9   by Chrzanowski to purchase the home.

10  ii.   SFG submitted the loan application to Regions Bank to obtain a short term

11  warehouse line of credit to fund the loan.  Regions Bank approved the loan and

12  wired approximately $1.3 million dollars, interstate, to Capital Title Agency,

13  Phoenix, on January 20, 2006.

### XXX60 East Filaree Lane

14

15  jj.   On or about February 8, 2006, SFG employee Vendittelli prepared a residential

16  loan application for F.Dellal to purchase the home located XXX60 East Filaree

17  Lane, Scottsdale, Arizona, for $1,359,900.00.  The residential loan application

18  falsely represented that F.Dellal owned a home that was worth $350,000.00 and

19  that F.Dellal would provide $10,000.00 as an earnest money deposit.  The true

20  value of the home was approximately $78,000.00.  F.Dellal was recruited by

21  Chrzanowski to purchase the home.

22  kk.   SFG submitted the loan application to Regions Bank to obtain a short term

23  warehouse line of credit to fund the loan.  F.Dellal's loan was funded by Regions

24  Bank who wired approximately $1.3 million dollars, interstate, to Capital Title

25  Agency, Phoenix, Arizona, on April 28, 2006.

### XX15 North 74th Place

26

27  ll.   On or about October 3, 2006, an SFG loan officer, acting at the direction of

28

13

1   Vendittelli, prepared a residential loan application for M.Bordner to purchase the

2   home at XX15 N. 74th Place, Scottsdale, Arizona, for $1,929,701.00. The

3   residential loan application falsely represented that M.Bordner had $363,000.00

4   in his bank account. M.Bordner was one of Ford's employees.

5   mm.   SFG submitted the loan application to First Collateral to obtain a short term

6   warehouse line of credit to fund the loan. First Collateral approved the loan and

7   wired approximately $1.9 million dollars, interstate, to Capital Title Agency,

8   Phoenix, Arizona, on October 5, 2006.

9   **XXX56 North 112th Place**

10  nn.   On or about October 19, 2006, SFG employee Vendittelli prepared a residential

11  loan application for S.DeGrado to purchase the home at XXX56 N. 112th Place,

12  Scottsdale, Arizona, for $1,653,000.00. The residential loan application falsely

13  represented that S.DeGrado earned $29,000.00 per month and generated $3,000.00

14  per month in rental income. The application also falsely represented that

15  S.DeGrado would provide a down payment of $108,000.00 at the time of closing.

16  S.Degrado was recruited by Ford to purchase the home.

17  oo.   SFG submitted the loan application to Terwin Mortgage to obtain a short term

18  warehouse line of credit to fund the loan. Terwin Mortgage approved the loan

19  and wired approximately 1.2 million dollars, interstate, to Capital Title Agency,

20  Arizona, on February 7, 2007.

21  **XXX93 North 94th Place**

22  pp.   On or about April 25, 2006, SFG employee Vendittelli prepared a residential loan

23  application for Chrzanowski to purchase the home at XXX93 North 94th Place,

24  Scottsdale, Arizona, for $894,826.00. The residential loan application falsely

25  represented that Chrzanowski intended to use the home as his primary residence.

26  qq.   SFG submitted the loan application to Regions Bank to obtain a short term

27  warehouse line of credit to fund the loan. Regions Bank approved the loan and

28

14

wired approximately $900,000.00, interstate, to Capital Title Agency, Arizona, on April 27, 2006.

rr.   On or about July 21, 2006, SFG employee Vendittelli prepared a residential loan application for E.Clark to purchase XXX93 North 94th Place for $1,249,000.00. The residential loan application falsely represented that E.Clark had $75,000.00 in the bank, and made $31,000.00 per month.  E.Clark was recruited by Brooks to purchase the home.

ss.   SFG submitted the loan application to Regions Bank to obtain a short term warehouse line of credit to fund the loan.  Regions Bank approved the loan and wired approximately $1.2 million dollars, interstate, to Capital Title Agency, Arizona, on August 30, 2006.

### XX02 East Lincoln Drive

tt.   On or about July 14, 2006, Vendittelli prepared a residential loan application for J.Hale to purchase the home located at XX02 E. Lincoln Drive, Paradise Valley, Arizona for $1,519,046.00. The residential loan application falsely represented that J.Hale had $170,000.00 in a bank account.  J.Hale was recruited by Ford to purchase the home which was owned by Chrzanowski.

uu.   SFG submitted the loan application to Regions Bank to obtain a short term warehouse line of credit to fund the loan.  Regions Bank approved the loan and wired approximately $1.5 million dollars, interstate, to Capital Title Agency, Arizona, on August 30, 2006.

### XX22 East June Circle

vv.   On or about July 21, 2006, SFG employee Vendittelli prepared a residential loan application for F.Archer to purchase the home at XX22 E. June Circle, Mesa, Arizona for $1,354,500.00.  The residential loan application falsely represented that F.Archer earned $29,000 per month.  F.Archer was recruited by Ford to purchase the home.

ww.   SFG submitted the loan application to Regions Bank to obtain a short term warehouse line of credit to fund the loan.  Regions Bank approved the loan and wired approximately $1.3 million dollars, interstate, to Capital Title Agency, Arizona, on August 23, 2006.

### XX70 East Calle Tuberia

xx.   On or about August 8, 2006, SFG employee Vendittelli prepared a residential loan application for SFG employee Travis Ford to purchase the home at XX70 East Calle Tuberia, Phoenix, Arizona for $629,000.00. The residential loan application falsely represented that Travis Ford intended to use the property as a primary residence.

yy.   In or around August, 2006, SFG employee Vendittelli prepared a residential loan application for E.Bruce to purchase the home at XX70 East Calle Tuberia, for $799,670.00.  The residential loan application falsely represented that E.Bruce earned $26,000 per month.  E.Bruce was recruited by Brooks to purchase the home.

zz.   SFG submitted the loan application to a lending institution and they approved the loan.

### XX01 East Mockingbird Lane

aaa.   On or about December 14, 2006, SFG employee Vendittelli prepared a residential loan application for M.Tucson to purchase the home at XX01 East Mockingbird Lane, Paradise Valley, Arizona for $2,683,394.00. The residential loan application falsely represented that M.Tucson paid $5,500.00 per month in rent, and that she would provide a $500,000.00 down payment at the time of closing.  M.Tucson was recruited by Chrzanowski to purchase the home.

bbb.   SFG submitted the loan application to Regions Bank to obtain a short term warehouse line of credit to fund the loan.  Regions Bank approved the loan and wired approximately $2.1 million dollars, interstate, to Capital Title Agency,

1    Arizona, on January 29, 2007.

2    **XXX16 North Club Pointe Drive**

3    ccc.    On or about November 20, 2006, SFG employee Vendittelli prepared a residential

4    loan application for R.Barriga to purchase the home at XXX16 North Club Pointe

5    Drive, Anthem, Arizona for $999,000.00.  The residential loan application falsely

6    represented that R.Barriga earned $18,300.00 per month and generated $3,000.00

7    per month in rental income.  The loan application also falsely represented that

8    R.Barriga would provide a down payment of $17,945.00 at the time of closing.

9    R.Barriga was recruited by Ford to purchase the home.

10   ddd.    SFG submitted the loan application to Winter Group to obtain a short term

11   warehouse line of credit to fund the loan.  Winter Group approved the loan and

12   wired approximately $1 million dollars, interstate, to BT Escrow, Arizona, on

13   February 7, 2007.

14   **XX92 East Hummingbird Lane**

15   eee.    In or around December, 2006, SFG employee Vendittelli prepared a residential

16   loan application for J.Keller to purchase the home at XX92 East Hummingbird

17   Lane, Phoenix, Arizona for $852,047.00.  The residential loan application falsely

18   represented that J.Keller earned $18,290.00 per month.  J.Keller was recruited by

19   Ford to purchase the home.

20   fff.    SFG submitted the loan application to Regions Bank to obtain a short term

21   warehouse line of credit to fund the loan.  Regions Bank approved the loan and

22   wired approximately $850,000.00, interstate, to BT Escrow, Arizona, on May 11,

23   2007.

24   **XX16 East De La Luna Street**

25   ggg.   On or about January 23, 2007, SFG employee Travis Ford prepared a residential

26   loan application for N.Creed to purchase the home at XX16 East Via De La Luna

27   Street, Scottsdale, Arizona for $797,799.00.  The residential loan application

28

17

1  falsely represented that N.Creed earned $15,000.00 per month, and that he would
2  provide a down payment of $10,079.00 at the time of closing.  N.Creed was
3  recruited by Brooks to purchase the home which was owned by Vendittelli.

hhh.  SFG submitted the loan application to Regions Bank to obtain a short term
warehouse line of credit to fund the loan.  Regions Bank approved the loan who
wired approximately $800,000.00, interstate, to BT Escrow, Arizona, on May 10,
2007.

**XXX03 North 39th Way**

iii.  On or about February 28, 2007, SFG employee Travis Ford prepared a residential
loan application for M.Taylor to purchase the home at XXX03 North 39th Way,
Phoenix, Arizona for $886,692.00.  The residential loan application falsely
represented that M.Taylor earned $14,000.00 per month and generated $3,200.00
per month in rental income.  M.Taylor was recruited by Ford to purchase the
home.

jjj.  SFG submitted the loan application to Regions Bank to obtain a short term
warehouse line of credit to fund the loan.  Regions Bank approved the loan and
wired approximately $880,000.00, interstate, to BT Escrow, Arizona on May 10,
2007.

All in violation of Title 18 United States Code, Section 1349 and 2 (aiding and abetting),
*Pinkerton v. United States*, 328 U.S. 640 (1946).

**COUNTS TWO THROUGH SEVENTEEN**
**WIRE FRAUD**
**(18 U.S.C. § 1343 & 2)**

13.  The factual allegations in paragraphs 1 through 7 and 8 through 12 of the Indictment are
incorporated by reference and re-alleged as though set forth fully herein.

14.  Beginning at a time unknown to the Grand Jury, but by at least as early as on or about
February, 2005, and continuing to a date unknown to the Grand jury, but through at least on or
about August 2007, in the District of Arizona and elsewhere, defendants CRAIG SR. and

18

CRAIG JR., and others known and unknown to the Grand Jury, using the business entities described above and others, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises.

15.     On or about the dates listed below, each date constituting a separate count, in the District of Arizona and elsewhere, for the purpose of executing said scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, defendants CRAIG SR. and CRAIG JR., and others known and unknown to the Grand Jury, did knowingly cause funds from Regions Bank, JP Morgan Chase Bank, First Collateral, and Terwin Mortgage Warehouse, to be transmitted into the Wells Fargo or National Bank of Arizona bank accounts of Capital Title Agency, BT Escrow, Ticor Title and First American Title, by means of wire, radio and television communications in interstate commerce, each such instance being a separate Count of this Indictment, as follows:

| Count | (On or About) Wire Date | Sender City/State | Recipient City/State (Receiving Bank) | Item Sent |
|-------|------------------------|-------------------|--------------------------------------|-----------|
| 2 | 9/28/05 | JP Morgan Chase Bank, New York, New York | Capital Title Phoenix, AZ (Wells Fargo Bank, N.A.) | Closing funds in the amount of $869,931.00 for the purchase of XXX01 E. Happy Valley Road, #34, Scottsdale, AZ |
| 3 | 1/20/06 | Regions Bank/ Birmingham, Alabama | Capital Title Phoenix, AZ (Wells Fargo Bank, N.A.) | Closing funds in the amount of $979,300.00 for the purchase of XXX97 N. 104th Street, Scottsdale, AZ |
| 4 | 8/4/06 | Regions Bank/ Birmingham, Alabama | Capital Title Phoenix, AZ (Wells Fargo Bank, N.A.) | Closing funds in the amount of $1,500,000.00 for the purchase of XXX01 E. Happy Valley Road, #34, Scottsdale, AZ |

| Count | (On or About) Wire Date | Sender City/State | Recipient City/State (Receiving Bank) | Item Sent |
|---|---|---|---|---|
| 5 | 8/14/06 | Regions Bank/ Birmingham, Alabama | First American Title Phoenix, AZ<br><br>(Wells Fargo Bank, N.A.) | Closing funds in the amount of $512,000.00 for the purchase of XX62 E. Calle Tuberia, Phoenix, AZ |
| 6 | 8/23/06 | Regions Bank/ Birmingham, Alabama | Ticor Title Phoenix, AZ<br><br>(Wells Fargo Bank, N.A.) | Closing funds in the amount of $1,000,000.00 for the purchase of XX22 E. June Circle, Mesa, AZ |
| 7 | 8/25/06 | Regions Bank/ Birmingham, Alabama | Capital Title Phoenix, AZ<br><br>(Wells Fargo Bank, N.A.) | Closing funds in the amount of $1,500,000.00 for the purchase of XX33 E. Indian Bend Road, Paradise Valley, AZ |
| 8 | 8/30/06 | Regions Bank/ Birmingham, Alabama | Capital Title Phoenix, AZ<br><br>(Wells Fargo Bank, N.A.) | Closing funds in the amount of $1,000,000.00 for the purchase of XX02 E. Lincoln Drive, Paradise Valley, AZ |
| 9 | 9/13/06 | Regions Bank/ Birmingham, Alabama | Capital Title Phoenix, AZ<br><br>(Wells Fargo Bank, N.A.) | Closing funds in the amount of $1,222,500.00 for the purchase of XXX23 N. Elena Drive, Fountain Hills, AZ |
| 10 | 9/15/06 | First Collateral/ Concord, California | BT Escrow Phoenix, AZ<br><br>(National Bank of Arizona) | Funds in the approximate amount of $787,070.00 for the refinance of XX40 E. Shea Boulevard, Phoenix, AZ |
| 11 | 9/22/06 | First Fidelity Bank/ Oklahoma City, OK | Terwin Mortgage Boston, MA<br><br>(U.S. Bank) | Line of Credit in the amount of $750,000.00 for the property at XX40 East Shea Boulevard, Phoenix, AZ |

| Count | (On or About) Wire Date | Sender City/State | Recipient City/State (Receiving Bank) | Item Sent |
|-------|------------------------|-------------------|----------------------------------------|-----------|
| 12 | 12/8/06 | Terwin Mort Ware/ Boston, Massachusetts | BT Escrow Phoenix, AZ<br><br>(National Bank of Arizona) | Closing funds in the amount of $711,373.00 for the purchase of XXX16 N. Club Pointe Drive, Anthem, AZ |
| 13 | 1/29/07 | Regions Bank/ Birmingham, Alabama | Capital Title Phoenix, AZ<br><br>(Wells Fargo Bank, N.A.) | Closing funds in the amount of $1,560,000.00 for the purchase of XX01 E. Mockingbird Lane, Paradise Valley, AZ |
| 14 | 2/15/07 | First Fidelity Bank/ Oklahoma City, OK | Regions Bank Birmingham, Alabama<br><br>(Regions Bank) | Line of Credit in the amount of $468,000.00 for the property at XX62 East Calle Tuberia, Phoenix, AZ |
| 15 | 3/5/07 | Regions Bank/ Birmingham, Alabama | BT Escrow Phoenix, AZ<br><br>(National Bank of Arizona) | Closing funds in the amount of $630,400.00 for the purchase of XX16 E. Via De La Luna Street, Scottsdale, AZ |
| 16 | 5/10/07 | Regions Bank/ Birmingham, Alabama | BT Escrow Phoenix, AZ<br><br>(National Bank of Arizona) | Closing funds in the amount of $680,000.00 for the purchase of XXX03 N. 39th Way, Phoenix, AZ |
| 17 | 5/11/07 | Regions Bank/ Birmingham, Alabama | BT Escrow Phoenix, AZ<br><br>(National Bank of Arizona) | Closing funds in the amount of $708,000.00 for the purchase of XX92 E. Hummingbird Lane, Phoenix, AZ |

In violation of Title 18, United States Code, Sections 1343 and 2 (aiding and abetting), *Pinkerton v. United States*, 328 U.S. 640 (1946).

### COUNTS EIGHTEEN THROUGH TWENTY
### FALSE STATEMENTS TO FINANCIAL INSTITUTION
### (18 U.S.C. § 1014 and 2)

16.    The factual allegations in paragraphs 1 through 7, and 8 through 12 of the Indictment are incorporated by reference and re-alleged as though set forth fully herein.

21

17.     On or about the dates set forth below, in the District of Arizona, defendants

CRAIG SR. and CRAIG JR., knowingly made and caused to be made materially false statements

as described below to a lending institution, the accounts of which were insured by the Federal

Deposit Insurance Corporation, for the purpose of influencing the actions of the institution:

| Count | On or About Date | Financial Institution | Activity |
|---|---|---|---|
| **18** | 9/21/06 | First Fidelity Bank | CRAIG JR. falsely represented to First Fidelity that, with respect to the property at XX40 E. Shea Blvd., M.Wilson was the owner and that SFG was unable to refinance or move the loan off of their credit line. These representations were false because SFG had obtained a refinance of the M.Wilson loan on 9/15/06. |
| **19** | 2/15/07 | First Fidelity Bank | CRAIG SR. and/or CRAIG JR. applied for a hospital line of credit from First Fidelity Bank, to pay Regions Bank, using the property at XX62 East Calle Tuberia as collateral. CRAIG SR. and/or CRAIG JR. falsely represented, that the mortgagee of XX62 East Calle Tuberia was A.Thierenen, and that First Fidelity could be placed in the first lien position for the property. These representations were false because this property had been sold to another buyer, C.Nash in October 2006, and the purchase had been funded by Terwin Mortgage. |
| **20** | 8/2/07 | First Fidelity Bank | CRAIG JR., falsely represented that 1) A.Threninen still owned the home at XX62 East Calle Tuberia and was making payments; 2) M.Wilson still owned the home at XX40 East Shea Boulevard and was making payments; and 3) that Zydek had refinanced the loan, XX602 E. Sunburst Drive, from another bank and not SFG. |

All in violation of Title 18, United States Code, Sections 1014 and 2 (aiding and abetting),

*Pinkerton v. United States*, 328 U.S. 640 (1946).

## FORFEITURE ALLEGATIONS

18.     The allegations in paragraphs 1 through 7, 8 through 12, 14, 15, and 17.

of the Indictment are incorporated by reference and re-alleged as though set forth fully herein.

22

19.     The allegations contained in Counts 1 through 16 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2)(A).

20.     Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343 set forth in Counts 1 through 3 of this Indictment, the defendants, CRAIG SR. and CRAIG JR., shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations.

21.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461, the defendant shall forfeit substitute property, up to the value of the forfeitable property, or any portion thereof, if by any act or omission of the defendants, the forfeitable property cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All in accordance with Title 18, United States Code, Sections 981 and 982; Title 28 United States Code, Section 2461; and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/s/

FOREPERSON OF THE GRAND JURY
Date: September 15, 2011

ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

/s/

Raymond K. Woo
Kevin R. Rapp
Assistant U.S. Attorneys

24